**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

RAHEEM RAHMAN, #302554　　　　　*

Plaintiff　　　　　　　　　　　　*

v　　　　　　　　　　　　　　　*　　　　Civil Action No. WMN-11-3497

J. MICHAEL STOUFFER, COMMISSIONER, *
et al.
　　　　　　　　　　　　　　　*

Defendants

**MEMORANDUM**

Before the Court is Raheem Rahman's ("Rahman") Complaint under 42 U.S.C. § 1983. Defendants Gregory Taylor, M.D. and Corizon, Inc. f/k/a Correctional Medical Services ("Medical Defendants"), by counsel, have filed a Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 25).   A separate Motion to Dismiss or, in the Alternative, for Summary Judgment has been filed by counsel for Defendants, Secretary Gary D. Maynard, Commissioner J. Michael Stouffer, Warden Bobby P. Shearin, Lt. Ernest Dolly, Sgt. Adam Whitacre, and Officer Glenn Hoover ("State Defendants").  (ECF No.  28). Rahman has filed an opposition to each responsive pleading. (ECF Nos. 31 and 36).[1]   The Court now rules pursuant to Local Rule 105.6 (D. Md. 2011), as a hearing is deemed unnecessary. For the following reasons, Defendants' Motions (ECF Nos. 25 and 28), construed as motions for summary judgment, will be granted by separate Order.

**BACKGROUND**

Rahman, an inmate at North Branch Correctional Institution ("NBCI"), claims that on November 17, 2010, Lt. Dolly, Sgt. Whitacre, and Officer Hoover used excessive force against him and then "lied and falsified" to cover their actions.  (ECF No. 1, Complaint at 7).   He also

---

[1]   On June 27, 2012,  Rahman filed an opposition (ECF No. 31) to the State Defendants' Motion to Dismiss.

claims Warden Shearin and Commissioner Stouffer[2] acted with deliberate indifference against him by failing to remedy his complaints.  As relief, Rahman requests damages and transfer to another correctional facility where he can "get treatment."  *See id* at 8.

Specifically, Rahman complains several State Defendants handcuffed him from the back, even though he explained to them that he was on "front cuff status" due to a shoulder injury. (ECF No. 1).  After he was cuffed from the back, he was placed in a holding cell where his request to have the handcuffs removed or cuffed in the front was ignored. He asserts that due to the pain, he stepped through the cuffs and put his hands in front while in a sitting position. Defendants then ordered him to replace his arm behind his back.  Rahman claims that as he was trying to explain his medical condition to the officers, Whitacre sprayed him with mace. Rahman then replaced his arms behind his back, but suffered serious pain and further shoulder damage as a result.[3]  He avers that he was forced to wear his clothes with pepper spray on them for four days.  (ECF No. 7).  He also claims he waited for twenty-four hours before provided a shower.  Rahman asserts that he has become more depressed and paranoid since this incident. Additionally, he claims Taylor denied him adequate medical care and exhibited deliberate indifference to his medical needs by rescinding the order for front cuffing based on "false accusations given to him by correctional staff."  *Id.*  Rahman also alleges that Taylor falsely documented that he was not in pain.  *See id*.

The State Defendants' verified records provide the following information.  On November 17, 2010, there was no order in effect providing that Rahman was to be handcuffed from the

---

[2]  Apart from naming Gary Maynard, Secretary of Public Safety and Correctional Services, Rahman does not present any claims against him.

[3]  In  his Administrative Remedy Procedure request, Rahman states three  bursts of spray were used. ECF No. 28, Ex. 1 at 3.

front. (ECF No. 28, Ex. 1 at 11 Declaration of Rhonda Skidmore, Assistant Director of Nursing, NBCI; *see also* Ex. 1 at 12-13; ECF No. 25, Ex. 1a).   A front cuffing order that had been in effect expired on November 9, 2010. *See id.*

On November 17, 2010, Lt. Ernest Dolly ("Dolly") was called to the cell occupied by Rahman and another inmate identified as Inmate Tooles ("Tooles") (ECF No. 28, Ex. 1, at 10). Because Tooles had been removed from the cell with both eyes blackened and swollen, Dolly had reason to believe that Tooles had been assaulted by Rahman. *See id.*[4]  Rahman was ordered to place his hands behind his back to be handcuffed and taken to a holding cell.  Rahman told Dolly that he was to be cuffed in the front due to a shoulder problem. *See id.*  Dolly told Rahman that he did not have medical documentation, but would check with the medical department. (ECF No. 28, Ex. 1 at 10). Rahman walked to the holding cell and was left there with the handcuffs behind his back.  While alone in the cell, Rahman slipped his cuffs from the back to the front.

The State Defendants have provided a video recording (without sound) of the NBCI holding cell showing Rahman sitting alone on a bench.   It shows him with apparent ease moving his handcuffed hands down his legs and under his feet from behind his legs to a position in front of his body.  (ECF No. 28, Exhibit 2A, Declaration of Randy Durst Regarding Video Recording).[5]  At approximately 12:55 p.m, Sgt.Whitacre ("Whitacre") was notified that Rahman

---

[4]  In the Notice of Inmate Rule Violation, Sgt. Whitacre indicated that Rahman  was assigned to administrative segregation and  was being moved from his housing unit.  Upon learning of the move, Rahman became agitated, "dancing back and forth and clinching and unclinching his fists." (ECF No. 28, Ex. 1 at 8, 22, 24-25).

[5]  Rahman viewed the video on February 19, 2013. (ECF No. 32, Ex. 3, Declaration of Randy Durst, Case Manager, NBCI). On March 1, 2013, he was sent notice that he had seventeen days to submit any additional reply.  (ECF No. 33).  On March 1, 2013,  Rahman submitted correspondence to this Court stating that he has  "filed responses" to all of the motions by the Defendants within the "1st week" and asking for an injunction to be transferred to another correctional facility and away from the officers who "assaulted" him.  (ECF No. 34).  He will be sent a copy of the

had "stepped" through his handcuffs and now had both arms in front of his body.  (ECF No. 28, Ex. 1, at 22). Several officers, including Dolly and Officer Glenn Hoover ("Hoover"), accompanied Whitacre to Rahman's holding cell. Upon their arrival at the holding cell and before opening the cell door , Whitacre ordered Rahman to return his cuffed hands to the behind position. *See id*. When Raheem failed to obey, Whitacre advised him that force could be used if he did not comply. *See id*. at 25.   Rahman disputes receiving a warning (ECF No. 36 at 6), although he acknowledges he initially failed to comply by moving his hands to the back. (ECF No. 1, Attachment).  Whitacre again directed Rahman to move his hands behind his back, and when Raheem failed to comply, Whitacre administered three bursts of pepper spray, two to the back and one to the face.  *See id* at 9, 25; Exhibit 2B, at 01:17.   Rahman then moved his cuffed hands behind his back. (Exhibit 1 at 000025; Exhibit 2B). The officers left the cell, returned approximately two minutes later, and motioned for Rahman to exit the now contaminated holding cell. (Exhibit 2B).

Sometime prior to 1:40 p.m. on November 17, 2010, Rahman was treated by Jeanette Wright, R.N. ("Wright") for exposure to pepper spray. Wright's medical note reports that Rahman was given two puffs on his albuterol inhaler per his request.  Further, Rahman denied any injury and did not appear to be injured.  (ECF No. 28, Exhibit 1, at 7).  Wright wrote Rahman was "[a]ble to verbalize needs w/o difficulty (shoulder discomfort stating he has current order to be front cuffed.)"  *Id*.  Respondents observe that although Wright also recorded that

---

docket sheet from this case. To the extent Rahman is seeking preliminary injunctive relief, he fails to satisfy the standard set forth in  *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S. _, 130 S.Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th  Cir. 2010) (per curiam). His request for preliminary injunctive relief (ECF No. 34) will be denied.

Rahman had a "front cuff order," her notation appeared to be based on Rahman's representations because she cited no then-current physician order for front-cuffing. (ECF No. 28, Memorandum; Ex. 1 at 7). [6]   After he was treated for pepper spray exposure, Rahman received a shower. *See id.* at 25.

Rahman was issued a Notice of Inmate Violation after the incident, and a hearing ensued on November 23, 2010. (ECF No. Exhibit 1, at 15).  Relying on the note regarding a front-cuffing order by Wright (who the State Respondents indicate declined to testify),[7] the hearing officer found Rahman not guilty of disobeying an order. *See id.* at 16-17.   The matter was referred for a formal hearing.

On November 23, 2010, Rahman filed a Request for Administrative Remedy ("ARP"), ARP NBCI 3474-10, in which he complained of mistreatment by Hoover, Dolly and Whitacre. He also complained about the mace sprayed by Whitacre (ECF No. 28, Ex. 1 at 2), and sought monetary damages.  On January 21, 2011, Warden Shearin dismissed Rahman's ARP, citing Rahman's failure to comply with Whitacre's orders.  *See id.* Rahman appealed Shearin's decision to the Commissioner's Office and asked for monetary damages.  In his decision, the Commissioner found the use of force on November 17, 2010 "inappropriate," but noted Rahman

---

[6]   The ALJ from the Office of Administrative Hearings determined:

> The record discloses that what the hearing officer had that convinced him at the November 23, 2010 adjustment hearing that there was a front cuff order on November 17, 2010,was an unsworn, hearsay statement related from a nurse who did not want to appear at the hearing and who said to a correctional officer that there was a front cuff order.   On the medical treatment form (citation omitted), the nurse who attended the Grievant on November 17, 2010, following the making , wrote that the *Grievant said* that he had a front cuff order. There was no reference to the date or author of such an order, but thereafter on the form, the nurse nonetheless wrote that there *was* a front cuff order. However, documentation that the Grievant actually had a then current, medically ordered front cuff order had expired. (Emphasis in original). (ECF No. 28, Ex. 3 at  9).

[7]   The record of the hearing  indicates "Nurse Simmons….she did not want to give testimony on the record… The institutional representative spoke to the nurse…." (ECF No. 28, ex. 16).   As noted earlier, Nurse Wright examined Rahman after the incident. The State Defendants do not address this discrepancy.

had not produced a medical order for front-cuffing when ordered to cuff from behind.  (ECF No.

28 at 6).    The Commissioner further found that policy was followed with regard to

administration of pepper spray, and no monetary compensation was awarded.  *See id.*  The

decision noted that the correctional staff involved in the matter were disciplined and ordered to

participate in refresher training.  *See id.*

On March 11, 2011, Rahman filed a grievance with the Inmate Grievance Office

(IGO) to appeal the Commissioner's decision. ECF No.  28, Ex. 3, Decision. The IGO referred

the case to the Office of Administrative Hearings (OAH), which conducted a hearing on the

grievance on August 3, 2011, before Administrative Law Judge ("ALJ") A.J. Novotny.  *See id*.

ALJ Novotny outlined the issues as follows:

> On November 17, 2010, was Mr. Rahman: (1) Forced to be handcuffed in back, in
> violation of a medical order that he be cuffed in front; (2) Manhandled; (3)
> Sprayed with mace; and(4) Denied a shower and medical attention thereafter for
> over 24 hours, and, if so, (5) What compensation is he due?

*Id.* at 2.

Although ALJ Novotny indicated that the issue of "inappropriate or excessive force" was

not before him, the judge noted that in order to review the request for damages, he ". . . must

consider what, if any damages are warranted as a result of cruel or unusual punishment by the

use of mace (or pepper spray), rear-cuffing and the otherwise unspecified manhandling." *Id*. at 6.

 Among  ALJ's findings-of-fact were: 1) on November 9, 2009, medical personnel issued

a front-cuff order for Rahman for one year. The medical order expired on November 9, 2010,

and was not renewed until February of 2011; 2)  from outside the holding cell, an officer directed

Rahman to return his hands to his back, but Rahman did not comply; 3) immediately thereafter,

at about 12:58 pm, five officers entered the cell, one officer sprayed mace/pepper spray at

Rahman; 4) Rahman then slipped his hands from his front to back, wipe his face with his knees, briefly paced the cell and then sat on the floor; and 5) at approximately 1:35 Rahman received medical treatment for the pepper spray. (ECF No. 28, Ex. 3 at 4-5).

After applying an Eighth Amendment analysis under Supreme Court and Fourth Circuit Court of Appeals case law, the administrative law judge concluded that Rahman failed to prove that any correctional officer acted in bad faith, maliciously or sadistically in subduing Rahman either by rear cuffing or the application of mace. *See id.* at 1, 7.  The ALJ found Rahman's testimony not credible, and any alleged new injury to Rahman's pre-existing shoulder condition unsubstantiated.  (ECF No. 28, Ex. 3  at 9-10).  The ALJ determined the grievance lacked merit, and ordered that it be denied and dismissed. ECF No. 28, Ex. 3.  Rahman appealed the decision to the Circuit Court for Allegany County where it was dismissed for failure to pay court fees. (ECF No. 28, Ex. 4).

## STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is properly granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party must demonstrate through the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that a reasonable jury would be unable to reach a verdict for the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24(1986). When this burden is satisfied, the non-moving party then bears the burden of demonstrating that there are disputes of material fact and that the matter should proceed to trial. *See Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).

7

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *See id*. at 249. Further, a court must construe the facts in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *In re: Apex Express Corporation*, 190 F.3d 624, 633 (4th Cir. 1999).  The court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. Mindful that Rahman is proceeding *pro se*, this Court has construed his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520(1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

### A.  State Defendants

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.1996).  In order to show a violation of the Eighth Amendment, an inmate must show prison officials "acted with a sufficiently culpable state of mind (subjective component) and the deprivation suffered or injury inflicted on him was sufficiently serious (objective component)."  *Id*.   In a claim for excessive application of force, a claimant must meet a heavy burden to satisfy the subjective component— that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good-faith effort to maintain or restore discipline." *Whitley v.*

*Albers*, 475 U.S. 312, 320–21(1986) (internal quotation marks omitted). To satisfy the subjective component, a claimant must show that a prison official acted with a "sufficiently culpable state of mind," *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

In an excessive force case a court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley*, 475 U.S. at 321(1986). Absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkins v. Gaddy*, 599 U.S. 34, 130 S.Ct. 1175, 1178 (2010). The extent of injury is one factor indicating whether or not the force used was necessary, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner was fortunate to escape serious harm. *See id*. at 1177.

The decision to use force against an inmate to restore order is "necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Whitley,* 475 U.S. at 320. Because correctional officers "must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer" from a use of force designed to restore order, when a correctional officer uses force only in "a good-faith effort to maintain or restore discipline," there is no constitutional violation. *Hudson v. McMillan*, 503 U.S. 1, 6, (1992). To determine whether use of force constitutes "a good faith effort to maintain or restore discipline" or was undertaken "maliciously and sadistically to cause harm," courts consider:
 1) the seriousness of any injury suffered by the inmate; 2) "the need for application of force;" 3)"the relationship between that need and the amount of force used;" 4) "the threat reasonably

perceived by the responsible officials;" and 5) "any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotations and citations omitted).  Further, use of pepper spray in correctional facilities, when used appropriately, is not in and of itself a *per se* violation of a prisoner's constitutional rights. *See Williams,* 77 F.3d at 763.   It can be constitutionally used in small quantities to control a "recalcitrant inmate." A limited application of mace may be "much more humane and effective than a flesh to flesh confrontation with an inmate." *Id.* (internal citations omitted).

Rahman acknowledges in his November 23, 2010, ARP that on November 17, 2010, he moved his handcuffs from the designated back position to a front position, despite having been told by corrections officers that he would not be cuffed from the front.  The silent video shows Rahman moving his cuffs from his back to a front position quickly and without apparent difficulty.  Additionally, Rahman concedes that when ordered by the officers to return the handcuffs to a rear position, he failed to comply, and "tried again to explain" his need for front cuffs.  (ECF No. 28, Ex. 1 at 3; ECF No. 31, Rahman's Opposition at 6).[8]  The officers had not been shown a front cuff order, and thus believed with reason that Rahman was disobeying a direct order, a category I rule violation. *See id.* at 22.  According to his report, Whitacre more than once ordered Rahman to move the cuffs back to a rear position, but Rahman ignored the orders.  ECF No. 28, Ex. 1 at 22.[9]  The officers then entered the cell, Whitacre administered a

---

[8]   As noted, Rahman provides no evidence that Whitacre or the other correctional officers were aware of the front cuff order.  Rahman did not present a copy of the order to them.  There is no evidence to suggest the officers acted with deliberate indifference to Rahman's medical condition when they ordered him to cuff from the back. Contrary to Rahman's claims, the correctional officers' refusal to let Rahman put on pants and shoes before escorting him to the holding cell does not demonstrate malicious or sadistic intent to use force.  (ECF No. 36, Plaintiff's Opp'n at 4).

[9]   The video shows Rahman looking out the cell window to the hallway near where the officers would have stood prior to entering the holding cell, and then turning away and sitting for a period of time without returning the cuffs to the back position.  (ECF No. 28, Ex. 2B).  Because there is no sound on the video recording, there is no audio

brief burst of pepper spray, and Rahman complied by returning his handcuffs to a back position. The video shows that after Rahman moved the cuffs over his legs to return to a cuffed from the back position, he was able to walk, speak, and wipe the pepper spray from his eyes. *See id.*   As observed by the ALJ who viewed the video, Rahman showed "remarkable agility and suppleness not only in easily and quickly moving his cuffed hands from behind his back to his front and then from front to back, but in wiping his face with his knees.  ECF No. 28, Ex. 3 at 8.[10]

The force used, the application of pepper spray, was brief, limited and undertaken to enforce an order intended to maintain prison safety.  Rahman had been removed from his cell after his cell mate appeared to have been beaten, possibly by Rahman.  Rahman was told to cuff from the back and disobeyed instructions when in the holding cell he moved his cuffs to the front.  The force applied followed Rahman's refusal to comply with a direct and reasonable order.   The use of pepper spray was tempered since Rahman had an opportunity to comply with the direct order before any spray was used. After the pepper spray was used, Rahman was almost immediately removed from the contaminated cell and provided medical attention.  Under these circumstances, Rahman does not meet his burden to show the force was applied "maliciously and sadistically for the very purpose of causing harm." *Whitley*, 474 U.S at 320. This use of force may well have merited officer disciplinary action and refresher training, but as alleged here, it does not amount to a violation of constitutional magnitude.

---

record of verbal exchanges between Rahman and the officers.  There was adequate time, however, to allow officers to convey a warning to Rahman.  Further, the time that elapsed between the officers' entry into the holding cell and administration of pepper spray was sufficient to allow additional verbal warning. *See id*.

[10]   It bears noting, however, that the mace was administered to a handcuffed, albeit from the front, inmate who was alone and seated.  While there is no cause to find the officers acted with malice or sadistic intent to cause harm, they were disciplined and sent for a refresher training.

Additionally, Rahman's request for injunctive relief, whereby he would be transferred to another correctional facility for "treatment" fails to state a claim of constitutional dimension. Rahman does not indicate what "treatment" is allegedly inadequate at North Branch Correctional Institution, why he needs this treatment, or the reasons he believes the medical care is superior at a different correctional institution.  In point of fact, the same health care provider is contracted to provide medical care to inmates throughout the institutions run by DPSCS. (ECF No. 28, Memorandum at 20).  To the extent Rahman might intend to allege that his current facility does not provide the treatment he desires for his shoulder, Rahman fails to state a cognizable constitutional claim. Institutional transfer decisions do not implicate a protected liberty interest or state a claim under § 1983. *See Meachum v. Fano*, 427 U.S. 270 (1976); *Paoli v. Lally*, 812 F.2d 1489, 1492–93 (4th Cir. 1987).  An inmate has no liberty interest in being housed in a particular facility, *see Olim v. Wakinekona*, 461 U.S. 238, 244–45 (1983).[11]

Lastly, Rahman asserts Warden Shearin and Commissioner Stouffer[12] acted with deliberate indifference by failing to remedy his complaints.  He also complains that Commissioner Stouffer failed to award him damages. Although Rahman may be disappointed with the outcome of his administrative proceedings, he provides no evidence that either defendant acted with deliberate indifference to his claims.

---

[11]   If Rahman claims he is being provided inadequate treatment for his shoulder condition, he may file a separate civil rights complaint.  The Court expresses no opinion regarding the merits of  his  medical claim, but will send him prisoner civil rights information packet.

[12]   Apart from naming Gary Maynard, Secretary of Public Safety and Correctional Services, Rahman does not present any claims against him.

**B.  Medical Defendants**

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that defendants' actions or failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need  and subjectively, the staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. See *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir.1997). "Actual knowledge or awareness on the part of the alleged inflicter ... becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir.1995) (quoting *Farmer*, 511 U.S. at 844).  Deliberate indifference requires treatment "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F. 2d 848, 852 (4th Cir. 1990).  Mere negligence or malpractice does not rise to a constitutional level.  *See Estelle*, 429 U.S at 105-06.   An inmate's disagreement with medical providers about the proper course of treatment does not support an

Eighth Amendment cause of action. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

### 1. Corizon, Inc.

Rahman does not allege any facts showing Corizon, Inc. ("Corizon") [13] had actual or constructive knowledge of the events at issue in this case. Thus, to the extent his against Corizon is based on supervisory liability or *respondeat superior*,[14] the claim must be dismissed for failure to state a claim. It is well settled that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love–Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under § 1983).

### 2. Dr. Taylor

Rahman was examined by medical personnel after the administration of pepper spray on November 17, 2013. Rahman stated he was experiencing shoulder discomfort as a result of cuffing behind his back. The medical record from this visit indicates that he denied any injuries. (ECF No. 24, Ex. 12-12a).

Rahman asserts Dr. Taylor ("Taylor") improperly rescinded the order for front handcuffing after the incident in question.[15] He states that on November 22, 2010, Taylor saw him for shoulder pain and "falsely claimed" on the medical chart that Rahman was experiencing no pain. Rahman argues Taylor premised his determination on "false accusations" made by corrections staff.

---

[13]   The Court takes notice that Corizon, Inc. is a private corporation that contracts with the State of Maryland to provide medical services to inmates at certain state institutions. Corizon administers medical care only through its agents and employees.

[14] *Respondeat superior* is a legal doctrine whereby an employer may be held responsible for its employees.

[15] As earlier noted, the front cuff order had expired prior to the November 17, 2010 incident. *See supra* p. 3.

Rahman provides no facts to support his conclusory and self-serving claim that Taylor improperly based his medical findings on the "false accusations" of corrections officers.  Indeed, Rahman provides no evidence that Taylor was aware of the incident prior to treating him, much less engaged with correctional staff in the type of conspiracy to which Rahman alludes. The November 22, 2010, medical examination revealed no indication of decreased muscle mass, numbness or tingling, and showed only slight tenderness and a moderately reduced range of motion.  As recorded by Taylor, when Rahman was asked to perform a particular range of motion, his performance led Taylor to observe the results militated "against any significant pain" finding.  (ECF No. 25, Ex. 13).[16]  When these facts are viewed in the light most favorable to Rahman, there is no genuine material issue of fact in dispute.  Accordingly, the Medical Defendants' Motion for Summary Judgment will be granted.

**CONCLUSION**

For these reasons, the Court will grant Defendants' Motions for Summary Judgment. A separate Order follows.


_March 12, 2013_____         ____/s/_____
Date                          William M. Nickerson
                               Senior United States District Judge

---

[16]   Taylor's comments in this regard state:

> Patient's ROM [range of motion] LT arm abducted and elbow flexed was above the beltline, so he can be cuffed behind the back.  Further, when he complained of "a lot of pain" in this position, with encouragement, he mooved [sic] the Lt. arm further, and his pulse never exceeded 68, speaking against any significant pain.

(ECF No. 25, Ex. 13a).